142 So. 129

**HENNEN et al. v. HENNEN et al.**

No. 30178.

Feb. 1, 1932.

On Rehearing May 23, 1932.

See, also, 173 La. 404, 137 So. 195.

J. W. Elder, of Ruston, for appellants.

Dhu Thompson, of Monroe, for appellees.

ODOM, J.

The appeal in this case having been abandoned, the only issue before the court is that

urged by appellees in their answer to the appeal, and motion to amend the judgment in which it is contended that the trial judge erred in dismissing, as in case of nonsuit, their demand for the value of timber cut and removed from the land and for rents and revenues.

Plaintiffs do not set out in their petition the amount claimed for timber cut and for revenues, nor do they pray for any specific amount therefor. The only mention of these items is in paragraphs 26 and 27 of the petition, paragraph 26 reading as follows:

"That the said Virgil A. Hennen has taken charge of, used and disposed of personal property and timber belonging to your petitioners and the other heirs of J. B. Hennen, deceased, and has had the use of all the real estate and cultivated the same since the death of said J. B. Hennen and received revenues and money therefrom and for all of which he should be forced to account."

In paragraph 27 it is alleged "that said Virgil A. Hennen having had full charge of all the property, personal, rights and credits belonging to said heirs and having acted without any right and authority in using, selling and disposing of the same, is accountable for all such property and revenue," and they pray for judgment "ordering and requiring an accounting by the defendant Virgil A. Hennen for the property rights and credits, as well as proceeds and revenue derived from and of said estate."

The trial judge in his written opinion disposed of this demand in the following language:

"The plaintiffs have sued in this suit for rents, revenues, value of timber cut and re-

moved from the land and other items claimed to be due them by defendant Virgil Hennen on account of his possession, occupancy and use of this land as owner; but these items are not set forth in the petition with such definiteness, amounts, and particularity, as would entitle them to even introduce proof in their support; and hence no judgment could be given on such demand in the present suit and under the present state of the evidence. And at the same time the value and nature of the improvements and betterments claimed by Virgil Hennen have not been shown as clearly and conclusively, nor their relation to the land, whether or not of such material enhancement to the permanent value of the land as would entitle the claimant to offset rents and revenues with them; and the fact that the real owners of the land are the seven heirs of John B. Hennen; all these facts taken together make it impossible to determine the respective rights of the litigants herein in the present suit, except upon one question involved, viz: the annulment of the partition sale."

This ruling is correct. The record discloses that J. B. Hennen, the ancestor of plaintiffs and defendants, died in April, 1925, leaving an estate consisting of several hundred acres of land, and personal property consisting of live stock, farming implements, corn, hay, cotton, etc., all on the farm which he occupied as a home, and five shares of bank stock, appraised at $875. His children and grandchildren, among them the defendant, a grandson, occupied the land, and made use of it and the personal property in common until April 6, 1926, when defendant was appointed administrator. The debts of the succession amounted to $974.27, and, in order to pay them, the court, upon application of the administrator, ordered the bank stock and all merchantable timber on the land in Jackson parish sold, the purchaser of the timber to have three years in which to remove the timber from the land. The bank stock sold for $910, and the timber for $550, and one horse was sold for $15. With the proceeds, the administrator paid all debts and costs of administration, and returned to the succession the land and all other personal property shown on the inventory. He was finally discharged on January 15, 1927. The real estate was partitioned by licitation, and defendant became the purchaser on August 13, 1927, and from that date to the filing of the present suit on March 24, 1928, he was in possession as owner.

The purpose of this suit was to set aside the partition sale on the ground that defendant colluded with certain of the heirs and with outsiders to suppress bidding at the sale and to "chill" competition so that he might acquire the property for less than its value. The trial court found for plaintiffs and set the sale aside.

The basis of plaintiffs' demand for revenues and for an accounting is that defendant was a purchaser and possessor in bad faith, and therefore should account to the heirs for all revenues derived from the property, and for what he appropriated during the time he held it.

Conceding that plaintiffs' contention is well founded and that he should render an accounting, the facts are that plaintiff made no proof of any specific amount of revenue derived by defendant during the time he possessed as owner. Shortly after defendant's grandfather died in April, 1925, he went upon

the land along with other heirs and cultivated part of it and made use of some of the live stock.

He seems to have done this by mutual agreement and understanding with the other heirs. Mrs. Hennen, the mother of these plaintiffs, who was a widow, also lived upon and cultivated part of the land with her father, Mr. Hightower. There is some testimony that he leased the land or some of it to Mr. Hightower, but no proof that he received any specific amount, nor is there any testimony showing the rental value of the land he himself cultivated.

He collected small amounts from hands on the place, but he says he used it to keep up the place, pay taxes, and to support his aged grandmother and some other dependent heirs, all of whom were living on the place.

Defendant took a note from Jim Hightower for $580, which counsel says was due the estate, and collected by him. But the testimony shows that he took in settlement some live stock and farming implements which are now on the place and belong to the heirs.

He also sold timber amounting to $150 and some pulp wood. The testimony is not clear as to the exact net amount he received for the wood. He said he was to get $2 per cord and that he sold 200 cords. But as we understand the testimony, he paid for the cutting. He also received $100 balance due on some other timber. But he speaks of having deposited in the bank at Choudrant, to the credit of the estate, part of the proceeds of the sale of this timber, and also about the payment of certain debts of the succession not listed on his final account, leaving the inference that he used this money, or part

at least, for the benefit of the estate. He also made considerable improvements on the land, for which he claimed credit in his reconventional demand.

From the testimony brought up, it is impossible to arrive at the amount, if any, due by defendant to these plaintiffs.

The judgment appealed from is affirmed.

## On Rehearing.

ROGERS, J.

Appellees admit that there is not sufficient proof in the record on which to base a judgment against appellant for rents and revenues. But they earnestly contend that there is proof, consisting of appellant's own admission, that appellant received the following amounts for timber removed from the property, viz.:

Timber sold to Jim Frazier,.........$150.00
Cord wood cut and sold paper mill,
    200 cords at $2.00,................ 400.00
Balance due on timber, collected from
    Jack Hammons,.................... 100.00
                                     ————
Total value of timber proved,........$650.00

And appellees argue that they are entitled to a judgment against appellant for the benefit of all the heirs, in which they would share in proportion to their interest in $650 received by him according to the above-mentioned items.

The court below found that, in the state of the record, it was impossible to determine the respective rights of the litigants, except upon the question of the annulment of the partition sale. We approved this finding in

our original opinion herein. A further examination of the record has convinced us of the correctness of the ruling.

Plaintiffs together own two-sevenths interest in the property of the succession of their deceased grandfather, John B. Hennen. The real defendant in this case is Virgil A. Hennen, owning a one-seventh interest in the succession. The other heirs owning the remaining four-sevenths interest in the succession are merely nominal defendants. None of them filed an answer nor otherwise took any part in the case. The appellant is Virgil A. Hennen, and the appellees are Jason B. Hennen and Mrs. Eva Hennen, tutrix of her minor children Pauline Hennen and J. W. Hennen, the plaintiffs.

As shown in our original opinion, the testimony is not clear as to the net amount appellant received for the 200 cords of pulp wood, since he appears to have paid for the cutting. Nor is it clear concerning the $100 that appellant received as the balance due for some other timber. Appellant speaks of having deposited a part of the proceeds of this item to the credit of the estate in the bank at Choudrant, and also of the payment of certain debts due by the succession which were not listed on his final account, the inference being plain that appellant used this money, in whole or in part, for the benefit of the succession.

Appellant also placed a number of improvements on the land, for the value of which he reconvened. But the value and the nature of the improvements are not shown with the clearness that would entitle appellant to offset them against the claims asserted against him by the appellees.

And the real owners of the property are the seven heirs of John B. Hennen, the respective interests of whom must be determined in any settlement among them.

Appellees vigorously argue that appellant, as a possessor in bad faith, cannot be permitted to offset his claim for improvements against their claims for rents and revenues, since the alleged improvements are not such as an owner may order removed from his land. Appellees cite in support of their argument Voiers v. Atkins Bros., 113 La. 303, 36 So. 974, and Boagni v. Stamen, 139 La. 851, 72 So. 417.

The cited cases are authority for the legal proposition that the possessor in bad faith is entitled to recover from the owner only the value of the improvements which are separable from the soil which the owner elects to keep, and not the improvements which are inseparable from the soil, such as irrigation canals and drainage ditches.

But even the possessor in bad faith is entitled to recover from the owner, in addition to the value of the removable works he elects to keep, the expenses incurred in the preservation of the property. Civ. Code, art. 2314; Voiers v. Atkins Bros., referred to supra.

And there are set up in appellant's reconventional demand claims for improvements which the owners may eventually elect to keep, and claims for certain expenses incurred in preserving the property. Appellant ought not to be precluded from establishing, if he can do so, the validity and the value of such claims.

For the reasons assigned, our original decree herein is reinstated and made the final judgment of the court.